# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3797

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Arkansas. |
| Mary Benz, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: June 11, 2012
Filed: June 20, 2012

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

PER CURIAM.

Mary Benz pled guilty to wire fraud, in violation of 18 U.S.C. § 1343, and the district court[1] sentenced her to 36 months' imprisonment. The applicable Guidelines range was 33 to 41 months' imprisonment. Benz appeals her sentence, challenging only the application of a two-level sophisticated means enhancement to her advisory Guidelines range. We affirm.

---

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

Between 1999 and 2009, Benz was an employee of Superior Industries (Superior) in Rogers, Arkansas. Benz was initially hired as a staff accountant but later attained the position of controller. During her employment, Benz used several schemes to defraud Superior. Specifically, between 2002 and 2009, Benz cashed 137 unauthorized manual checks from Superior's payroll accounts totaling $156,836.57. Benz failed to enter such checks into the payroll system per company policy. In addition, between 2005 and 2008, Benz made 62 fraudulent electronic transfers of Superior's funds totaling $171,292.81 to her personal bank account. She initiated these transactions through bank programs to which she had access, and she falsely labeled the transactions as "returned," "payroll," or "transfer" to conceal her fraud. Benz also strategically timed such transfers so as to avoid detection by external auditors. Pursuant to another scheme that took place between 2005 and 2009, Benz wrote 47 company checks purportedly for "petty cash" and "Wal-Mart TeleChecks," but kept the money, totaling $28,462.69, for herself. Finally, Benz received payroll overpayments between 2005 and 2009 totaling $37,306.53. Documents Benz created to authorize such overpayments falsely indicated that her payroll check had been lost or that a direct deposit had been canceled.

Benz's fraudulent activity was detected during an internal investigation and she was subsequently charged with one count of wire fraud, in violation of 18 U.S.C. § 1343. Benz pled guilty to the offense on May 5, 2011, and a presentence investigation report (PSR) was prepared. The PSR recommended a sophisticated means enhancement under United States Guidelines Sentencing Manual (U.S.S.G.) § 2B1.1(b)(9)(C) (2010). Section 2B1.1(b)(9)(C) provides for a two-level enhancement in fraud cases if the offense "involved sophisticated means." The application notes accompanying § 2B1.1 define "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n.8(B). Benz objected to the application of the enhancement, arguing that her fraudulent conducted did not rise to the level of sophistication contemplated in § 2B1.1(b)(9)(C). The district court

overruled Benz's objection and applied the enhancement, emphasizing that Benz employed four different methods to defraud Superior between 2002 and 2009 and that Benz took steps to conceal her acts.

The sole issue on appeal is whether the district court erred when it applied the sophisticated means enhancement.[2] We find no error on this record. While Benz attempts to show that each method she employed was unsophisticated in isolation, we have held that "[r]epetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme." United States v. Jenkins, 578 F.3d 745, 751 (8th Cir. 2009) (quotation omitted). Here, Benz's repetitive and coordinated transactions, involving well over 200 fraudulent checks and transfers, amounted to a multi-front assault on Superior's finances over at least a seven-year period. See United States v. Fiorito, 640 F.3d 338, 351 (8th Cir. 2011) (finding sophisticated means where defendant's fraud spanned three years, targeted eleven victims, and involved repetitive and coordinated conduct, even though the basic element of the scheme was relatively simple), cert. denied, 132 S. Ct. 1713 (2012). And, to ensure the covert success of her operation, Benz used bank programs, falsely labeled transfers, created false documents, and strategically timed certain transactions to avoid detection by external auditors. Viewed as a whole, these facts show that Benz's offense "involved sophisticated means" as contemplated in § 2B1.1(b)(9)(C).

We affirm.

_____

[2]The government points out an intracircuit split regarding whether we review this issue de novo or for clear error. As we find no error, clear or otherwise, we need not address the split here. See United States v. Jenkins, 578 F.3d 745, 751 (8th Cir. 2009) (declining to address this split where "the more exacting de novo standard of review [was] satisfied").